518 A.2d 141

**Robert D. McKENZIE**

v.

**C.C. KOTTCAMP & SONS, INC., et al.**

**No. 281, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Dec. 5, 1986.

Ronald C. Brubaker, Cumberland, for appellant.

William Walsh (Walsh, Walsh & Reinhart on the brief for appellees, Kottcamp & Sons, Inc. and Standard Fire Ins. Co.), Cumberland.

Irving B. Klitzner, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. and Sophia L. Swope, Asst. Atty. Gen. on the brief for appellee, Subsequent Injury Fund), Baltimore, for appellees.

Argued before GARRITY, BLOOM and KARWACKI, JJ.

KARWACKI, Judge.

On October 27, 1976, the appellant, Robert D. McKenzie, sustained a back injury in an industrial accident. The accident occurred in the course of the appellant's employment with C.C. Kottcamp & Sons, Inc. ("Kottcamp"). Standard Fire Insurance Company ("Standard") was Kottcamp's worker's compensation insurer at the time.

Pursuant to Maryland's worker's compensation law, Mr. McKenzie was paid temporary total disability benefits for a number of years following his injury. In 1984 his case was brought before the Workmen's Compensation Commission ("the Commission") to deal with the questions of permanent disability and termination of temporary total disability benefits. The Subsequent Injury Fund ("the Fund") was impleaded at that time. Following a hearing on August 24, 1984, the Commission passed a Supplemental Award of Compensation on October 10, 1984. The Commission found that Mr. McKenzie was permanently totally disabled and attributed 65 percent of that disability to his accidental injury of October 27, 1976, 25 percent to a preexisting condition, and 10 percent to subsequent deterioriation. Compensation in accordance with those findings was ordered.

Mr. McKenzie appealed that award to the Circuit Court for Allegany County where the case was tried before a jury on April 24, 1985. The jury found that Mr. McKenzie's temporary total disability benefits terminated on November 8, 1984 and that he was permanently totally disabled. In apportioning Mr. McKenzie's disability, the jury altered the Commission's findings slightly, attributing 65 percent of the disability to Mr. McKenzie's accidental injury of October 27, 1976, 35 percent to a preexisting condition, and zero percent to subsequent deterioriation.

On July 31, 1985, the Commission passed a modified award of compensation in which it adopted the jury's findings at the circuit court trial. That award provided:

> ORDERED that compensation for temporary total disability terminate on November 8, 1984. It is further ORDERED that C.C. Kottcamp & Son, Incorporated, employer, and Standard Fire Insurance Company, insurer, pay unto Robert D. McKenzie, claimant, compensation for permanent partial disability at the rate of $118.00, payable weekly, beginning November 9, 1984 for a period of 433 weeks pursuant to the provisions of Section 36, Sub-section (4a) of Article 101. It is further ORDERED

that the Subsequent Injury Fund pay unto Robert D. McKenzie, claimant, compensation for permanent total disability at the rate of $176.00, payable weekly, to begin at the end of compensation benefits herein awarded for permanent partial disability to be paid by the employer and insurer during the permanent total disability of the claimant; subject to the provisions of the Workmen's Compensation Law of Maryland.

From this modified award, Mr. McKenzie again appealed to the Circuit Court for Allegany County, raising as the sole issue the weekly rate of compensation to be paid by the employer and its insurer. The matter was argued before the Honorable Gary G. Leasure, who issued an Opinion and Order affirming the Commission's award. Mr. McKenzie appeals from that decision.

Only one issue is presented for our consideration:

In a permanent total disability case, should the benefits be paid to the Claimant at the same rate per week by both the employer/insurer and the Subsequent Injury Fund?

The appellant contends that because he was found to be permanently totally disabled, his weekly compensation from the employer/insurer should be at the same permanent total disability rate that the Subsequent Injury Fund was ordered to pay at the conclusion of the employer/insurer's payments. Requiring the employer/insurer to pay only permanent *partial* disability benefits for 433 weeks, the appellant argues, is inconsistent with the determination that he is permanently totally disabled and deprives him of compensation to which he is entitled during that period.

In support of his position, the appellant relies on the statutory provision governing payments by the Subsequent Injury Fund in permanent disability cases. Md.Code (1957, 1985 Repl.Vol., 1986 Supp.), Art. 101, § 66(1) states:

Whenever an employee who has a permanent impairment due to previous accident or disease or any congenital condition, which is or is likely to be a hindrance or obstacle to his employment, incurs subsequent disability

by reason of a personal injury, for which compensation is required by this article resulting in permanent partial or permanent total disability that is substantially greater by reason of the combined effects of the impairment and subsequent injury than that which would have resulted from the subsequent injury alone, the employer or his insurance carrier shall be liable only for the compensation payable under this article for such injury. However, in addition to such compensation to which the employer or his insurance carrier is liable, and after the completion of payments therefor provided by this article, the employee shall be entitled to receive and shall be paid additional compensation from a special fund to be known as the "Subsequent Injury Fund," created for such purpose, in the manner described hereafter in this section, *it being the intent of this section to make the total payments to which such employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury resulting in permanent total disability* or a substantially greater permanent partial disability. (Emphasis added.)

The appellant contends that the Commission's award is in conflict with the statutory intent expressed in the emphasized language just quoted. We disagree.

Although the appellant was found to have a permanent total disability, only 65 percent of that disability was attributed to his industrial accident on October 27, 1976. The remaining 35 percent was attributed to a preexisting condition. Under those circumstances, the Commission correctly perceived that Kottcamp, as the appellant's employer on October 27, 1976, should be liable only for so much of the appellant's disability as was attributable to his accidental injury on that date. *See Subsequent Injury Fund v. Kraus*, 301 Md. 111, 112, 482 A.2d 468 (1984); *Dent v. Cahill*, 18 Md.App. 117, 129, 305 A.2d 233 (1973).

The appellant does not challenge the apportionment of responsibility for his disability but argues nonetheless that the Commission should have ordered the employer and its

insurer to pay at the applicable permanent total disability rate rather than at the permanent partial rate. In effect, the appellant would have the Commission order an accelerated schedule of payments at the permanent total disability rate after determining the total compensation for which the employer is liable using the formula for awards applicable to permanent partial disability.

The appellant, at the time of his accident on October 27, 1976, had a preexisting back condition. In terms of § 66(1), he incurred "subsequent disability by reason of a personal injury, for which compensation is required by this article resulting in ... permanent total disability that is substantially greater by reason of the combined effects of the [previous] impairment and subsequent injury than that which would have resulted from the subsequent injury alone." In such cases, the employer's liability is limited to "the compensation payable under this article for such injury," the injury referred to being the disability that "would have resulted from the subsequent injury alone." *Subsequent Injury Fund v. Kraus, supra,* 301 Md. at 115, 482 A.2d 468.

Having established that 65 percent of the appellant's disability was attributable to "the subsequent injury alone," the Commission calculated the compensation to be paid by the employer using the provisions of the Workmen's Compensation Article, Md.Code, *supra,* Art. 101, governing awards in permanent partial disability cases.[1] Specifically, the Commission looked to subsections (4)(a) and (4a) of § 36. Section 36(4)(a) provides a formula for determining the number of weeks of compensation due an employee who suffers a permanent partial disability other than those specifically enumerated disabilities set forth in subsection (3) of § 36. Subsection (4)(a) directs that compensation shall be awarded "in such proportion as the determined loss

---

1. Although the Commission's order does not specify the precise calculations used in arriving at its award, the computational steps involved can be deduced using the relevant provisions of Article 101.

bears to 500 weeks." Under that formula, the 65 percent disability attributable to the appellant's subsequent injury converted to 325 weeks (65% of 500). Consequently, he was considered to have a "serious disability" under subsection (4a), which provides in pertinent part:

A person who, from one accident, receives an award of compensation for a period of two hundred and fifty (250) weeks or more under subsection (3) or (4) of this section or a combination of both, is thereby considered to have a serious disability.... The weeks for such award shall be increased by one third (computed to the nearest whole number); and the compensation shall be for sixty-six and two-thirds per centum of the average weekly wages, in no case to exceed sixty-six and two-thirds per centum of the State average weekly wage of the State of Maryland as determined by the Department of Employment Security.

Increasing the number of weeks by one third, or 108 weeks, the Commission determined that the appellant was entitled to benefits from the employer for a period of 433 weeks. The State's average weekly wage, which was $176 in October 1976, was the relevant figure for determining the amount of compensation in this case. Sixty-six and two-thirds percent of $176 is $118, resulting in the Commission's award of that amount per week for the 433 weeks during which the employer and its insurer were to pay compensation. We find no error in those calculations. The question remains whether § 66(1) requires the employer to pay compensation at the permanent total disability rate set forth in § 36(1), which in this case would be $176 (one hundred percent of the State's average weekly wage).[2]

The posture of the case *sub judice* is similar to that in *Subsequent Injury Fund v. Kraus, supra.* There the Commission found that James Paul Kraus, a Baltimore City firefighter, was permanently totally disabled after he was

---

**2.** As we noted above, the Commission ordered the Subsequent Injury Fund to pay at this rate upon completion of the payments by the employer and its insurer.

unable to return to work following the first of two myocardial infarctions. Seventy percent of Kraus' disability was attributed to occupational disease and 30 percent to a preexisting condition. The Commission ordered the City, as Kraus' employer, to pay him compensation for permanent total disability at the rate of $192 per week, up to a total sum of $63,045. The Fund was ordered to pay Kraus compensation at the same permanent total disability rate of $192 per week upon completion of the City's payments.[3]

The Fund argued in *Kraus* that the employer (the City) and the Fund should pay compensation concurrently, with the City paying 70 percent and the Fund paying 30 percent of each weekly payment. The Court of Appeals rejected that argument as contrary to the express language in § 66(1) stating that the Fund pays after the completion of payments by the employer. 301 Md. at 115, 482 A.2d 468. Furthermore, the Court concluded that the Commission was correct in using the permanent partial disability provisions of § 36(4)(a) to determine the City's liability even though Kraus was permanently totally disabled. The Court noted:

> The Commission's methodology takes it through the steps of permanent partial awards because § 66(1) directs that the disability from the subsequent injury "alone" be determined, and the percentage of disability must be converted into a dollar amount in order to determine how much of the total award is payable by the employer.

*Id.* at 120, 482 A.2d 468.

The Commission in *Kraus* followed a series of computations virtually identical to those used in arriving at the

---

**3.** Prior to 1973 total compensation in permanent total disability cases was limited to $45,000. Chapter 671 of the Acts of 1973 effectively repealed that ceiling by adding the following proviso to § 36(1)(a):

> [P]rovided, however, that if the employee's total disability shall continue after a total of $45,000.00 has been paid, then further weekly payments at the. rate previously paid shall be paid to him during such disability.

That amendment made possible open-ended awards such as those in *Kraus* and the case *sub judice.*

appellant's award in this case. *See id.* at 116, 482 A.2d 468. However, after using the permanent partial disability provisions to determine that the City should compensate Kraus for his subsequent injury alone at a weekly rate of $135 for a period of 467 weeks, the Commission multiplied those two figures to arrive at $63,045 as the total compensation payable by the City to Kraus. It then ordered the City to make payments at a rate of $192 per week, the weekly payment to which Kraus was entitled for permanent *total* disability. Those payments by the city were to continue until the City had paid $63,045, its maximum potential liability as determined using the permanent *partial* disability provisions. Thus, rather than paying $135 per week for 467 weeks, the City was ordered to pay $192 per week for approximately 334 weeks. This use of the permanent total rate of payment is precisely what the appellant desires in the case *sub judice.* All parties concede that the issue raised here was not addressed by the Court of Appeals in *Kraus.* [4]

We are unable to find any justification, statutory or otherwise, for the position urged upon us by the appellant. As we have discussed, the Commission was correct in its preliminary determination that the employer was obligated to compensate the appellant only for the portion of disability attributable to his subsequent injury alone, *i.e.,* that

---

**4.** Although the Fund argued that "use of the permanent total rate of payment improperly accelerated by more than 138 weeks the time when the Fund's payments would begin," the Court of Appeals did not address the point because it had not been addressed by this Court or the circuit court and because it was not raised in the Fund's petition for certiorari. *Id.* at 123, 482 A.2d 468.

The appellant cites two cases in addition to *Kraus* in which the Commission ordered both the employer and the Fund to pay compensation for permanent total disability at the same weekly rate. *Anchor Motor Freight, Inc. v. Subsequent Injury Fund,* 278 Md. 320, 323, 363 A.2d 505 (1976); *Dent v. Cahill, supra,* 18 Md.App. at 120, 305 A.2d 233. Without examining the circumstances under which the awards in those cases were made, the appellant's reliance on them is misplaced because the issue squarely presented to us here was not before the appellate courts in those cases. Therefore, they carry no precedential weight with respect to that issue.

portion which resulted from his accident on October 27, 1976. In accordance with the rationale of *Kraus,* the Commission calculated the employer's liability "by using § 36(4)(a) and (4a) as if the injury were one for an 'Other Cases' permanent partial disability." *Subsequent Injury Fund v. Kraus, supra,* 301 Md. at 117, 482 A.2d 468.

Once the Commission determined that the employer should pay the appellant permanent partial disability benefits, it followed that payment of those benefits should be at the applicable permanent partial rate. As Judge Leasure reasoned in his opinion below:

> If the employer's obligation is for the injury which resulted from the "subsequent injury alone," then the rate of payment should also be predicated on a permanent partial basis. Absent specific legislation, it would be inconsistent to have the total award calculated on one basis and the rate of payment on another. The Commission's ruling is consistent with Article 101 Section 66(1) and the rationale of the *Kraus* holding.

We agree that there is no legislation providing for payment at a permanent total disability rate in cases where the award is for permanent partial disability. Certainly nothing in § 36 indicates that the Legislature contemplated such a possibility. Nor does § 66(1) support such a result, despite the appellant's efforts to persuade us otherwise. The statement of intent in the first paragraph of § 66(1)[5] clearly expresses the purpose behind the creation of the Subsequent Injury Fund. It says nothing that indicates an intent to alter the rate at which compensation due from the employer is to be paid. The only reference to compensation from the employer in § 66(1) has been discussed previously

---

5. *". . . it being the intent of this section to make the total payments to* which such employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury resulting in permanent total disability or a substantially greater permanent partial disability."

—"the employer or his insurance carrier shall be liable only for the compensation payable under this article for such injury." The Commission's award in this case was consistent with that mandate.

We observe that "all Sections of the Workmen's Compensation Law (Article 101) must be read and considered together in arriving at the true intent of the Legislature, as they form part of a general system." *Subsequent Injury Fund v. Chapman,* 11 Md.App. 369, 375, 274 A.2d 870, *aff'd per curiam,* 262 Md. 367, 277 A.2d 444 (1971). It is also true that "the Workmen's Compensation Act is to be liberally construed in favor of injured employees." *Subsequent Injury Fund v. Thomas,* 275 Md. 628, 635, 342 A.2d 671 (1975). This, however, does not warrant the exercise of judicial legislation in which the appellant would have us engage. Requiring the Commission to order payment by the employer and its insurer at a permanent total disability rate would go beyond anything suggested in the provisions of the Workmen's Compensation Act. That Act should not be "construed to provide for compensation beyond that authorized by its provisions and purpose." *Subsequent Injury Fund v. Thomas, supra,* 275 Md. at 635, 342 A.2d 671. *See also Barbee v. Hecht Co.,* 61 Md.App. 356, 364, 486 A.2d 785 (1985). Therefore, we decline to construe the statute in the manner requested by the appellant.

We recognize that the rate of the award of compensation in this case may cause the appellant some hardship. Nevertheless, absent specific legislation providing for accelerated payments at a permanent total disability rate, we hold that the Commission was correct in ordering the employer and its insurer to pay compensation at the applicable permanent partial rate.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.