532 A.2d 703

**Robert D. McKENZIE**

v.

**C.C. KOTTCAMP & SONS, INC. et al.**

**No. 26, Sept. Term, 1987.**

Court of Appeals of Maryland.

Oct. 30, 1987.

Motion for Reconsideration Denied Dec. 4, 1987.

Ronald C. Brubaker, Cumberland, for appellant.

William Walsh (Walsh, Walsh & Reinhart, on the brief), Cumberland, for C.C. Kottcamp & Sons, Inc. and Standard Fire Ins. Co., part of appellees.

Irving B. Klitzner, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Andrew H. Baida, Asst. Atty. Gen., on the brief), Baltimore, for Subsequent Injury Fund other part of appellee.

Argued before MURPHY, C.J., and COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

RODOWSKY, Judge.

The issue in this permanent, total .disability, subsequent injury, workers' compensation case is the rate at which the compensation apportioned to the employer is paid.   Although the total amount of compensation payable by the employer is apportioned as if the injury were a permanent partial one, we shall hold for the reasons given below that

periodic payments of the amount so apportioned are to be paid at the rate at which permanent total disability compensation is paid.

In October 1976 the petitioner, Robert D. McKenzie (McKenzie), injured his back while in the employ of one of the respondents, C.C. Kottcamp & Sons, Inc. (Kottcamp). On appeal of the ensuing compensation claim a jury found that McKenzie was permanently, totally disabled, that sixty-five percent of the disability was attributable to the 1976 accident, and that thirty-five percent was attributable to a pre-existing condition. On remand the Workmen's Compensation Commission (the Commission) entered the order which is at issue here. Kottcamp was ordered to pay "compensation for permanent partial disability at the rate of $118.00, payable weekly, beginning November 9, 1984, for a period of 433 weeks[.]" The Commission further ordered the Subsequent Injury Fund (the Fund) to pay McKenzie "compensation for permanent total disability at the rate of $176.00, payable weekly, to begin at the end of compensation benefits herein awarded for permanent partial disability to be paid by the employer[.]"

Perceiving some inconsistency in compensating his total disability at partial disability rates for the first 433 weeks of compensation, McKenzie appealed to the Circuit Court for Allegany County which affirmed the Commission. McKenzie pressed on to the Court of Special Appeals which affirmed the Circuit Court for Allegany County. *McKenzie v. C.C. Kottcamp & Sons, Inc.,* 69 Md.App. 413, 518 A.2d 141 (1986). The claimant petitioned this Court for a writ of certiorari, pointing out that the question presented is the very one which the Fund had attempted to raise, but had failed to preserve, in *Subsequent Injury Fund v. Kraus,* 301 Md. 111, 482 A.2d 468 (1984).

We have previously commented that "[t]he Compensation Law fails to meet the test of logical consistency in many respects." *Bata Shoe Co. v. Chvojan,* 188 Md. 153, 159, 52 A.2d 105, 108 (1947). The particular order under review

here is a product of seemingly conflicting signals contained in § 66(1), ¶ 1.[1]  In relevant part it reads:

Whenever an employee who has a permanent impairment due to previous accident or disease or any congenital condition, which is or is likely to be a hindrance or obstacle to his employment, incurs subsequent disability by reason of a personal injury, for which compensation is required by this article resulting in permanent partial or permanent total disability that is substantially greater by reason of the combined effects of the impairment and subsequent injury than that which would have resulted from the subsequent injury alone, *the employer ... shall be liable only for the compensation payable under this article for such injury.*  However, in addition to such compensation ... and after the completion of payments therefor provided by this article, the employee shall be entitled to receive and shall be paid additional compensation from [the Fund], in the manner described hereafter in this section, *it being the intent of this section to make the total payments to which such employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury resulting in permanent total disability or a substantially greater permanent partial disability.*  [Emphasis added.]

Kottcamp and the Fund rest their argument on the language first italicized above.  McKenzie rests his argument on the language secondly italicized above.  Each italicized portion embodies one of the policies which the Fund was created to achieve.  Here the policies clash and our task is to construe the statute under these circumstances.

■   The policy of limiting the employer's liability for compensation to that payable for the subsequent injury is designed to encourage employers to hire handicapped persons.  *Subsequent Injury Fund v. Pack*, 250 Md. 306, 308,

---

1.  All statutory references are to Md. Code (1957, 1985 Repl.Vol.), Art. 101.

242 A.2d 506, 508 (1968). The court in *Reliance Ins. Co. v. Watts,* 16 Md.App. 71, 293 A.2d 836 (1972) set the course for determining the amount of compensation payable by the employer in § 66(1), ¶ 1 cases. The court noted "that the only explicit authority to apportion under § 66(1) arises when the subsequent injury results in death." 16 Md.App. at 73, 293 A.2d 836. Death cases are governed by § 66(1), ¶ 3 under which the employer and the Fund concurrently pay weekly compensation in the respective percentages for which each is responsible. *See C & P Telephone Co. v. Subsequent Injury Fund,* 297 Md. 339, 466 A.2d 39, *aff'g per curiam,* 53 Md.App. 508, 453 A.2d 1243 (1983). Cases in which death does not result are governed by § 66(1), ¶ 1 under which the Fund does not begin its payments until after the completion of payments by the employer. *See Subsequent Injury Fund v. Kraus, supra,* 301 Md. at 115, 482 A.2d 468. In *Reliance* the court recognized that in order to limit the liability of the employer to compensation for the subsequent injury it was necessary to imply in § 66(1), ¶ 1 the authority to apportion. *Reliance* implied in § 66(1), ¶ 1 a method of apportioning through "the precise determination of the compensation payable for the current injury." 16 Md.App. at 73, 293 A.2d 836.

The pre-existing disability of the claimant in *Reliance* was the loss of one leg and the subsequent injury was the loss of the other leg. *Reliance* held that the Commission had erred in apportioning the combined effect, *i.e.,* permanent total disability, fifty percent to the Fund and fifty percent to the employer. *Id.* at 74, 293 A.2d 836. Rather, compensation payable for the subsequent injury had to "be determined upon the assumption that the employee had no pre-existing 'permanent impairment[.]' " *Id.* at 75, 293 A.2d 836. *Reliance* concluded by saying:

The [C]ommission should have ordered the employer and insurer to make the payments called for by the schedule in § 36(3)(b) for the loss of a leg, plus the additional payments provided in § 36(3)(a) for serious disability, and should have ordered the [Fund], after

completion of those payments, to pay additional compensation to make the total payments equal to the compensation for permanent total disability. [*Id.* at 75–76, 293 A.2d 836.]

The apportionment technique implied into § 66(1) under the *Reliance* rationale was employed by the Commission in the award reviewed in *Kraus*. There we said, with reference to the total of compensation payments apportioned to the employer, that "[b]y this method the Commission correctly honored the limitation of § 66(1) para. 1 that 'the employer ... shall be liable only for the compensation payable under this article for such injury.'" 301 Md. at 116, 482 A.2d 468.

■ That apportionment technique was also used in the instant matter. Reviewing how the subject award was computed sets the stage for the issue concerning rate of payment. The jury agreed with the Commission's conclusion that, absent any prior impairment, McKenzie's accidental back injury of October 1976 would have produced a sixty-five percent permanent partial disability. Had there been no prior impairment, that back injury would have been compensable under § 36(4)(a) for 325 weeks (sixty-five percent of 500).[2] That compensation would have been increased as a serious injury pursuant to § 36(4a) by one-third, or 108 weeks, to a total of 433 weeks.[3] Likewise on

---

**2.** Section 36(4)(a) in relevant part provides:

In all other cases of disability other than those specifically enumerated disabilities set forth in subsection (3) of this section, which disability is partial in character, but permanent in quality, the Commission shall determine the portion or percentage by which the industrial use of the employee's body was impaired as a result of the injury ... and shall award compensation in such proportion as the determined loss bears to 500 weeks, the said compensation to be paid weekly at the rate of sixty-six and two-thirds per centum of the average weekly wages, in no case to exceed thirty-three and one-third per centum of the State average weekly wage....

**3.** Section 36(4a) provides:

A person who, from one accident, receives an award of compensation for a period of two hundred and fifty (250) weeks or more

the assumption that McKenzie had no prior impairment, § 36(4a) would have fixed the amount of weekly compensation at two-thirds of the claimant's average weekly wages, limited by two-thirds of the statewide average weekly wage. In October 1976 when McKenzie's accident occurred, the statewide average weekly wage was $176 so that the ceiling on payments was $118. Consequently, under the *Reliance-Kraus* method of apportionment, because Kottcamp would have been liable for $51,094 of compensation for permanent partial disability ($118 per week × 433 weeks), Kottcamp was liable for $51,094 of the compensation for permanent total disability payable to McKenzie.

Section 36(1), dealing with permanent total disability, provides for compensation of two-thirds of the claimant's average weekly wages up to a maximum of one-hundred percent of the statewide average weekly wage. In the case before us the Commission ordered the employer to pay at the permanent partial rate ($118 per week) while the Fund was thereafter to pay at the permanent total rate ($176 per week). In *Kraus* the Commission ordered the employer to pay the liability allocated to the employer at the permanent total rate and ordered the Fund thereafter to pay at that same rate. That is the feature of the order in *Kraus* which had not been preserved for review.

Under § 36(1) "if the employee's total disability shall continue after a total of $45,000.00 has been paid, then further weekly payments at the rate previously paid shall be paid to him during such disability." McKenzie's point is that if he continues to be totally disabled after $45,000 has been paid he will never recover the $25,114 which represents the $58 per week difference between $176 and $118

---

under subsections (3) or (4) or a combination of both, is thereby considered to have a serious disability.... The weeks for such award shall be increased by one third (computed to the nearest whole number); and the compensation shall be for sixty-six and two-thirds per centum of the average weekly wages, in no case to exceed sixty-six and two-thirds per centum of the State average weekly wage of the State of Maryland....

over 433 weeks. In order to comply with the intent of § 66(1) "to make the total payments to which [McKenzie is] entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury," McKenzie urges that Kottcamp be directed to pay the total amount of compensation apportioned to the employer at the rate of $176 per week.

Kottcamp and the Fund, on the other hand, say that increasing the weekly payments from $118 to $176 makes Kottcamp liable for more compensation than that payable for the subsequent injury alone and improperly accelerates by approximately 143 weeks the time when the Fund would begin paying compensation. The respondents submit that increasing the rate at which compensation is paid in these cases will undermine the policy of encouraging employers to hire handicapped persons.

In its analysis the Court of Special Appeals said that "there is no legislation providing for payment at a permanent total disability rate in cases where the award is for permanent partial disability." 69 Md.App. at 422, 518 A.2d 141. That court believed "the exercise of judicial legislation" would be required to reach the result for which McKenzie contends. *Id.* at 423, 518 A.2d 141.

The absence of legislation providing for payment at a permanent total disability rate in cases where the award is for permanent partial disability does not resolve the issue. The instant case is one of compensation for permanent total disability and logically the rate of payment should be that applicable to permanent total disability. The complication arises from the fact that the compensation is apportioned between successive payors. We have seen above how *Reliance* implied into § 66(1), ¶ 1 a method of apportioning which looked to § 36 in order to give effect to the policy in § 66(1), ¶ 1 of limiting the employer's liability. Thus, the issue here is whether that policy is so strong that it requires judicially implying into § 66(1), ¶ 1 not only the amount of compensation payable for the subsequent injury

alone, but also the rate at which that compensation is payable.

If apportionment by comparison to partial disability carries with it the partial disability rate of payment, then "the total payments to which [McKenzie] shall become entitled" will not be "equal to the compensation that would be due for the combined effects of the impairment and subsequent injury resulting in permanent total disability[.]" § 66(1). The construction urged by Kottcamp and the Fund treats the conflict as irreconcilable and has the policy of limited liability dominate over the policy of compensation equal to that due for the combined effects. On the other hand, the two portions of § 66(1), ¶ 1 which we italicized above can be harmonized in large measure by construing "the compensation payable" for the subsequent injury as referring to the total amount payable, without having the limitation of liability include the rate of payment in permanent, total cases. Under that construction potential employers of handicapped persons are discouraged, if at all, by only an acceleration of the rate of payment. Any impact would be limited to the cost of money.

Counsel for the Fund acknowledged at oral argument in this Court that the particular order before us reflects the thinking of but one member of the Commission while the remaining nine members of the Commission direct the employer to pay at the permanent total disability rate in similar cases. It is not clear to what extent orders entered by the other nine commissioners in similar cases have been appealed to the circuit courts or what the results have been. Nevertheless *Kraus,* decided in October of 1984, highlighted and left undisturbed a Commission order which we now learn reflected the practice of ninety percent of the current commissioners. The General Assembly has amended § 66 on two occasions following the *Kraus* decision, by Ch. 767 of the Acts of 1986 and Ch. 442 of the Acts of 1987, but has done nothing to modify the administrative practice reflected in *Kraus.* These factors are also entitled to weight in our construction of § 66(1), ¶ 1.

We hold that the policy of protecting the employer in subsequent injury, permanent, total disability cases is satisfied by limiting the employer's liability to the total compensation apportioned to the subsequent injury without denying compensation equal to that payable for total disability by reducing the rate of payment to a partial disability rate.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THIS CASE TO THE CIRCUIT COURT FOR ALLEGANY COUNTY WITH INSTRUCTIONS FURTHER TO REMAND THIS CASE TO THE WORKMEN'S COMPENSATION COMMISSION FOR THE ENTRY OF AN ORDER CONSISTENT WITH THIS OPINION. COSTS TO BE PAID ONE–HALF BY C.C. KOTTCAMP & SONS, INC. AND STANDARD FIRE INSURANCE COMPANY, ITS INSURER, AND ONE–HALF BY THE SUBSEQUENT INJURY FUND.*