482 A.2d 468

**SUBSEQUENT INJURY FUND**

v.

**James Paul KRAUS et al.**

**No. 131, Sept. Term, 1983.**

Court of Appeals of Maryland.

Oct. 15, 1984.

Sophia L. Swope, Asst. Atty. Gen., Towson (Stephen H. Sachs, Atty. Gen., Baltimore, on the brief), for appellant.

Alfred M. Porth, Theodore B. Cornblatt, S. Woods Bennett and Smith, Somerville & Case, Baltimore, amicus curiae on the brief, for Moriconi Const. Co., Maryland Cas. Co., Packaging Services of Maryland, Inc. and Nationwide Mut. Ins. Co.

L. William Gawlik, Asst. City Sol. (Benjamin L. Brown, City Sol. and Sheldon H. Press, Chief Sol., Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, DAVIDSON,* RODOWSKY and COUCH, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (Retired), Specially Assigned.

RODOWSKY, Judge.

The dispute in this workers' compensation case is between the Subsequent Injury Fund (the Fund) and the employer, the Mayor and City Council of Baltimore (the City), over how much of an award for permanent total disability each is to pay. We shall hold that the employer is responsible for so much of the award as equals compensation payable for that disability which the subsequent injury would have caused, absent the prior impairment, and that the Fund is responsible for the balance of the award.

The claimant, James Paul Kraus (Kraus), had been employed by the City as a firefighter beginning in 1964. He was diagnosed as having high blood pressure in 1972. On March 11, 1978, Kraus suffered the first of two myocardial infarctions and has been unable to return to work. His average weekly wage was $287.17. The Workmen's Compensation Commission (the Commission) found that Kraus was permanently totally disabled and that "70% of such disability is reasonably attributable to the occupational disease and 30% is due to the pre-existing condition." The

---

* Davidson, J., participated in the hearing and in the conference of the case in regard to its decision, but because of illness did not take part in the adoption of the opinion.

Commission ordered the City, a self-insurer, to pay Kraus "compensation for permanent total disability at the rate of $192.00 per week beginning March 14, 1978 not to exceed the sum of $63,045.00 allowable under 'Other Cases' ...." The Fund was ordered to pay Kraus "compensation for permanent total disability at the rate of $192.00 per week and continuing during the period of permanent total disability; beginning at the end of compensation to be paid by the [City]."

Prior to 1973 total compensation payable for permanent total disability was limited to $45,000. Chapter 671 of the Acts of 1973 eliminated any ceiling by adding a proviso which reads:

[P]rovided, however, that if the employee's total disability shall continue after a total of $45,000.00 has been paid, then further weekly payments at the rate previously paid shall be paid to him during such disability. [Md.Code (1957, 1979 Repl.Vol., 1984 Cum.Supp.), Art. 101, § 36(1)(a).[1]]

Under the Commission's award to Kraus the City's portion is limited to $63,045 while the Fund's portion is open ended.

The Fund appealed, contending that employer and Fund should pay compensation concurrently, so that in this case the City and the Fund should pay Kraus 70% and 30%, respectively, of the required weekly payments. The circuit court affirmed the Commission and the Fund appealed to the Court of Special Appeals. In an unreported opinion that court affirmed the circuit court. We granted the Fund's petition for certiorari, which advanced the argument, *inter alia*, that the Commission's method of allocating permanent total disability awards in subsequent injury cases was at odds with the allocation in death cases approved in *C & P Telephone Co. v. Subsequent Injury Fund*, 297 Md. 339, 466 A.2d 39 (1983). There we affirmed for the reasons set

---

1. Unless otherwise indicated all citations to statutes are to Md.Code (1957, 1979 Repl.Vol., 1984 Cum.Supp.), Art. 101, "Workmen's Compensation."

forth in the opinion for the Court of Special Appeals by Judge Adkins, 53 Md.App. 508, 453 A.2d 1243 (1983).

We affirm the Court of Special Appeals in this case. The Fund's position contradicts the express language of the first unnumbered paragraph of the controlling statute, § 66(1). In relevant part § 66(1) para. 1 provides:

Whenever an employee who has a permanent impairment due to previous accident or disease or any congenital condition, which is or is likely to be a hindrance or obstacle to his employment, incurs subsequent disability by reason of a personal injury, for which compensation is required by this article resulting in permanent partial or permanent total disability that is substantially greater by reason of the combined effects of the impairment and subsequent injury than that which would have resulted from the subsequent injury alone, the employer or his insurance carrier shall be liable only for the compensation payable under this article for such injury. However, in addition to such compensation to which the employer or his insurance carrier is liable, and after the completion of payments therefor provided by this article, the employee ... shall be paid additional compensation from [the Fund], it being the intent of this section to make the total payments to which such employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury resulting in permanent total disability or a substantially greater permanent partial disability.[2]

---

**2.** Section 66(1) consists of three unnumbered paragraphs. Paragraphs 2 and 3 are relevant to arguments advanced by the Fund which we discuss *infra.* For continuity with para. 1 we set forth below the next two paragraphs of § 66(1):

Benefits from the Subsequent Injury Fund hereunder shall not be payable unless the combined effects resulting from a previous impairment and a subsequent accidental injury result in a permanent disability exceeding 50 per centum (50%) of the body as a whole; and that the previous impairment and subsequent accidental injury is each compensable, as determined by the Commission, for a

The essence of the Fund's argument, quoted from its brief, is as follows:

> Where such injury in conjunction with prior impairment results in the combined effects of permanent total disability, then each factor contributes to the total disability. The previous impairment does not, standing alone, render the claimant permanently totally disabled and the compensable injury alone does not render the claimant permanently totally disabled. The combined effects, however, do. Therefore, the Employer should be charged with the percentage of permanent total disability which is caused by the injury, and the Subsequent Injury Fund should be charged with the percentage contributed by the pre-existing condition, or prior permanent impairment. Payments by both parties should be simultaneous and begin from the first payment for permanent total disability.

Paragraph 1 of § 66(1) clearly states that the Fund pays after the employer has paid. The payments are not concurrent. The system which the Fund urges has the employer and the Fund paying their shares of each weekly payment to the claimant throughout the period of permanent total disability.

Further, the employer's obligation is "only for the compensation payable under this article for such injury." The "injury" referred to is the disability that "would have resulted from the subsequent injury alone . . . ." The step-

---

period of not less than 125 weeks. However, the previous impairment shall be determined as of the date of the subsequent injury.

If the subsequent injury of such an employee shall result in the death of the employee and it shall appear that death was due in part to the previous impairment and in part to the subsequent accidental injury, the Commission shall determine the proportion of such death which is reasonably attributable to the subsequent accidental injury and the proportion thereof which is reasonably attributable to the previous impairment, and the employer or his insurance carrier, or the State Accident Fund shall be liable for the compensation payable for that proportion of the employee's death which is reasonably attributable to the subsequent accidental injury, and the Subsequent Injury Fund shall be liable for the balance of benefits payable as in death cases resulting solely from an accidental injury.

by-step calculation of the Commission's award reflects how compliance with this aspect of § 66(1) para. 1 was achieved.[3]

The Commission attributed 70% of the permanent total disability to the subsequent injury. In the words of § 66(1) para. 1, 70% is the extent of disability "which would have resulted from the subsequent injury alone . . . ." The Commission then looked to § 36(4)(a), the "Other Cases" section. It generally provides that in certain permanent partial disability cases the Commission is to determine the percentage of loss of industrial use of the employee's body "and shall award compensation in such proportion as the determined loss bears to 500 weeks, the said compensation to be paid weekly at the rate of [66⅔%] of the average weekly wages, in no case to exceed [33⅓%] of the State average weekly wage . . . ." As of March 11, 1978, one-third of the State average weekly wage was $68. Because the Commission found a 70% disability attributable to the subsequent injury and because 70% permanent partial disability converts to 350 weeks under § 36(4)(a), the Commission treated Kraus' subsequent injury as a "serious disability" under § 36(4a). In serious disability cases "[t]he weeks for such award shall be increased by one third . . . and the compensation shall be for [66⅔%] of the average weekly wage . . . ." The latter limitation as of March 11, 1978, was $135. Increasing the 350 weeks by one-third, or 117 weeks, to a total of 467 weeks and multiplying 467 weeks by the maximum serious disability rate of $135 per week, the Commission arrived at $63,045 as the total amount payable by the City to Kraus.

By this method the Commission correctly honored the limitation of § 66(1) para. 1 that "the employer . . . shall be liable only for the compensation payable under this article for such injury." Having determined that a 70% permanent

---

3. Commission orders do not detail the calculations. The Fund, however, presents the specifics in its brief as a foundation for an argument discussed *infra*. Neither the City nor *amici* dispute the Fund's description of the computational steps followed by the Commission. Claimant Kraus, who is to receive the same total payments no matter how they might be divided between City and Fund, filed no brief.

partial disability "would have resulted from the subsequent injury alone," the Commission computed the City's liability by using § 36(4)(a) and (4a) as if the injury were one for an "Other Cases" permanent partial disability. The Commission's calculation comports with the rationale of *Reliance Ins. Co. v. Watts*, 16 Md.App. 71, 293 A.2d 836 (1972), the Maryland appellate decision most nearly in point.

Watts had lost his left leg in an earlier accident and lost his right leg in the subject accident. Absent "conclusive proof to the contrary" loss of both legs is a permanent total disability under § 36(1)(a) for which compensation was limited to $45,000 when Watts lost his second leg. The Commission attributed 50% of the disability to the loss of each leg and ordered compensation accordingly. In support of the award the Fund argued "that it is 'the percentage of industrial loss of use of the body as a whole *due to* the [second] injury' which is chargeable to the claimant's current employer ...." *Id.* at 74, 293 A.2d at 838 (emphasis added). The court rejected that argument as conflicting with the policy behind § 66(1) which is to encourage employers to hire handicapped individuals by limiting the employer's liability. *See Subsequent Injury Fund v. Pack*, 250 Md. 306, 308, 242 A.2d 506, 508 (1968). Section 66(1) para. 1, properly applied, required the Commission first to compute the employer's liability for loss of one leg as if there were a permanent partial disability under the "scheduled injuries" provisions of § 36(3), enhanced by the serious disability subsection, and then to subtract that amount from the $45,000 maximum for permanent total disability to arrive at the Fund's share. Judge Jerrold V. Powers, writing for the court, explained its holding with the following illustration:

If one should assume that a person with perfect sight in one eye, though blind in the other, may retain 90% of the industrial use of his body as a whole, it would be clear that loss of his remaining sight would render him totally disabled. It could be said as a medical fact that the subsequent injury resulted in the loss of the 90% industri-

al use of the body as a whole which he had before the second injury. If the contention of the Subsequent Injury Fund were sound, the current employer and his insurer would be responsible for this 90% loss. The risk of this responsibility is precisely the risk against which § 66(1) protects the employer. If. it did not afford that protection, the purpose of the legislation, "to persuade the employer to employ the handicapped individual by limiting the liability, which the employer may otherwise have incurred" would be defeated at the start.

We hold that "the compensation payable under this article for such injury", referring to a subsequent injury which calls for the application of § 66(1), must be determined upon· the assumption that the employee had no pre-existing "permanent impairment due to previous accident or disease or any congenital condition, which is or is likely to be a hindrance or obstacle to his employment". [16 Md.App. at 75, 293 A.2d at 838.]

This Court, in *Anchor Motor Freight, Inc. v. Subsequent Injury Fund,* 278 Md. 320, 325, 363 A.2d 505, 509 (1976), *aff'g Subsequent Injury Fund v. Compton,* 28 Md.App. 526, 346 A.2d 475 (1975), expressed the rule laid down by § 66(1) to be that

the Fund is directed to contribute to the employee's compensation an amount equal to the difference between the award payable for the subsequent injury *alone* and that payable for the second injury combined with the previous impairment. [Emphasis added.]

We then cited *Reliance Ins. Co., supra,* as "[a] graphic demonstration of this general principle . . . ." *Id.*

Further, the background of *Leach v. John T. Clark & Son, Inc.,* 20 Md.App. 109, 314 A.2d 689, *cert. denied,* 271 Md. 739 (1974), like *Reliance,* reflects rejection of a stream of causation analysis for allocating directly to the total payable under § 36(1)(a) the percentage shares between employer and Fund in cases of permanent total disability incurred prior to the repeal of a limit on compensation

actually payable in permanent total cases. Under the statutes in effect at the time of Leach's subsequent injury, there was a $30,000 limit on compensation for permanent total disability. The Commission attributed 10% disability to the current injury and 90% to a pre-existing condition. The award against the employer was $3,000, apparently computed by applying 10% to $30,000. On appeal the circuit court modified the award against the employer to $1,250. That represented 10% of the then $12,500 maximum allowable under "Other Cases" and treats the hypothetical 10% disability as a permanent partial disability. The modification is consistent with the Commission's methodology in the instant matter. The Court of Special Appeals' opinion did not address this point because the employee conceded that the modified award was correct.

Indeed, the parties seem to be in accord that following the elimination of a ceiling on the amount of compensation ultimately payable for permanent total disability the practice of the Commission has been to compute the amount for which the employer is liable by reference to the statutory provisions governing the amount of award in permanent partial disability cases.

The only way for the Fund to prevail in this case is to establish an implied repeal of those provisions of § 66(1) which call for (1) finding the disability that "would have resulted from the subsequent injury alone"; (2) payment of "the compensation payable under [Art. 101] for such injury" first by the employer; and (3) consecutive payment of the balance of the compensation for the combined disability by the Fund. Statutes are to be construed harmoniously, and repeals which have not been expressed by the General Assembly "will not be found unless demanded by irreconcilability or repugnancy." *Board of Education v. Lendo*, 295 Md. 55, 63, 453 A.2d 1185, 1189 (1982). And *see Carroll County Education Ass'n v. Board of Education*, 294 Md. 144, 448 A.2d 345 (1982); *White v. Prince George's County*, 282 Md. 641, 387 A.2d 260 (1978); *Harden v. Mass Transit Admin.*, 277 Md. 399, 354 A.2d 817 (1976).

In an effort to surmount the terms of § 66(1), the Fund presents a two-step argument. First, it attempts to make § 36(1)(a) control shares as well as the total compensation to be paid in permanent total cases. At the next level of the argument the Fund submits that the proviso added to § 36(1)(a) impliedly repeals the § 66(1) obstacles to its position. But the argument does not demonstrate any irreconcilable conflict.

The Fund's submission begins by asserting that it is illogical, when Kraus has been found totally and permanently disabled, for the Commission to look to the "Other Cases" provisions of § 36(4)(a), which deal with permanent partial disability. It says that the Commission should have turned to § 36(1), which deals with permanent total disability, and simply apportioned the payments as they are made on the basis that the prior and subsequent injuries have contributed to the combined disability. But nothing in that analysis prevents §§ 36(4)(a) and 66(1) from standing together. The Commission's methodology takes it through the steps of permanent partial awards because § 66(1) directs that the disability from the subsequent injury "alone" be determined, and the percentage of disability must be converted into a dollar amount in order to determine how much of the total award is payable by the employer.

Step two of the Fund's argument emphasizes § 36(1) as controlling the entire methodology in permanent total disability cases and sees an implied repeal of part of § 66(1) para. 1 by the 1973 removal of any limit on compensation for permanent total disability. This approach assumes that the employer's contribution is a percentage of the total award equal to the extent to which the subsequent injury caused the disability under consideration and assumes that the Fund's contribution is a percentage of the total equal to the extent to which the prior impairment contributes to the present disability. This approach further assumes that, prior to the revision of 1973, the percentages were applied directly against the $45,000 limit to produce the amount of

compensation to be paid by the respective interests. When the limit was repealed, so the argument goes, the total amount of compensation to be paid became indefinite, the percentages could not be applied against a known number as had been done previously, and it became necessary to have the employer and the Fund respectively pay their portions concurrently beginning with the first week of payments and at those shares on into the future. The argument ignores § 66(1), which is not irreconcilable with amended § 36(1)(a). The sections are compatible under *Reliance* and the other cases discussed *supra* which reject the notion that the percentages are determined by streams of causation.

The Fund also bases an argument on para. 2 of § 66(1). That paragraph requires the previous impairment and the subsequent injury each to be compensable for not less than 125 weeks before the Fund is liable. See *supra* note 2. The Fund says that the General Assembly did not intend para. 2 to apply to cases where the combined disability is permanent total. As a corollary to the Fund's claim that employer and Fund are mutually obliged indefinitely to make concurrent payments under § 36(1)(a), all permanent total cases should be deemed to exceed 125 weeks as to both payors. The Fund considers it improper to apply para. 2 to a case of permanent total disability, as if the claim were divisible into two permanent partial segments. The Fund says there will be cases where so large a number of weeks of compensation will be attributed to the employer, either on the § 36(4)(a) scale under which 500 weeks represents permanent total disability or on that scale enhanced under § 36(4a), that fewer than 125 weeks will remain to be attributed to the Fund. Consequently, as the argument goes, there will be no Fund liability, and a permanent total case will result only in compensation for permanent partial disability paid by the employer.

The question of how § 66(1) para. 2 is to be interpreted and applied is not directly before us for decision in this case.

Here, 70% permanent partial disability was attributed to the subsequent injury alone, so that the remaining 30 percentage points represent 150 weeks on the "Other Cases" scale, even before applying the "serious disability" provision. We also note, without intimating any view on the matter, that there is commentary which denies the Fund's premise as to the legislative intent. *See* Maryland Institute for Continuing Professional Education of Lawyers, Inc., *Workmen's Compensation Manual* 178–79 (1981 & Supp.1984).[4] In any event, even if we assume that indefinite liability in permanent total cases should always be considered to exceed 125 weeks, that does nothing to assist the Fund in finding an implied repeal of the express language in § 66(1) para. 1. The assumption does not lead to the conclusion that the employer's contribution cannot be calculated by reference to the permanent partial disability sections or that employer and Fund payments must be concurrent.

Next, the Fund asserts that *C & P Telephone Co. v. Subsequent Injury Fund, supra,* controls the interpretation of § 66(1) para. 1. *C & P* involved allocation between employer and Fund of the award in a death case. It was controlled by the third paragraph of § 66(1). See *supra* note 2. Where "death was due in part to the previous impairment and in part to the subsequent accidental injury, the Commission [is to] determine the proportion of such

---

4. We refer to the following passage:
   How about the case of 95% disability under "other cases", and the balance of permanent total due to pre-existing causes. The claimant could conceivably get more than 125 weeks of compensation from the Fund, if he lives long enough. Would, therefore, this 5% pre-existing disability qualify under the 125 week statute? We would strongly urge that this would defeat the intention of the 125 week statute, which is to rule out Fund payment for both insignificant accidents and insignificant pre-existing causes. We would urge the Court to apply the same 25% disability (125 weeks under ordinary rates for the "other cases" schedule) on the pre-existing portion as is applied on the accident for the simple reason that there is no other possible means of calculating the pre-existing 125 weeks in permanent total cases if it is not done that way.

death which is reasonably attributable to" each. We interpreted the para. 3 language essentially to call for a stream of causation analysis much like the analysis which the Fund contends applies when the combined disability is permanent total. Nevertheless, the para. 3 language differs materially from the para. 1 language. The judicial construction of para. 3 does not alter what para. 1 says.

The Fund also complains of the rate of payment specified in the Commission's order in this case. After the Commission used $135 per week to compute the total of $63,045 payable by the City, the Commission ordered the City to pay at the rate of $192 per week. The latter figure was two-thirds of Kraus' average weekly wage. Payment to Kraus at the rate of $192 per week is consistent with § 36(1)(a), where the maximum weekly payment for a permanent total disability claim is 100% of the State average weekly wage. That was $202 as of March 11, 1978. One hundred and ninety-two dollars ($192) per week, however, exceeds the $135 per week ceiling then applicable to "Other Cases," even when the serious disability provision was also applied. This is cited by the Fund as further illustrating the illogic of the Commission's method. We have approved the prior steps of that method *supra.*

The Fund alternatively argues that use of the permanent total rate of payment improperly accelerated by more than 138 weeks the time when the Fund's payments would begin, even if the Commission's basic methodology was correct. The Court of Special Appeals did not address this point because it had not been raised before the circuit court. We do not address the point for the further reason that it was not raised in the Fund's petition for certiorari. *See* Maryland Rule 813 a.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE SUBSEQUENT INJURY FUND.