768 A.2d 105

**Linda K. BALL**

v.

**UNIVERSITY OF MARYLAND, College Park, et al.**

**No. 490, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

March 6, 2001.

Benjamin T. Boscolo (Chasen & Boscolo, Chartered on the brief), Greenbelt, for appellant.

Joan P. Adelman, Towson, for appellees.

Argued before SALMON, SONNER and JOHN F. McAULIFFE (retired, specially assigned), JJ.

JOHN F. McAULIFFE, Judge, retired, specially assigned.

■ We are here asked to determine the intent of the Legislature with respect to a provision in the Workers' Compensation Law that requires an annual cost of living adjustment of benefits paid to persons with permanent total disability. We hold that cost of living adjustments mandated by Section 9–638 of the Labor and Employment Article, Maryland Code (1991, 1999 Repl.Vol.), must be applied to cases of permanent total disability resulting from the combined effects of a subsequent injury [1] and a pre-existing impairment as well as those resulting solely from one injury.

Appellant, Linda K. Ball, is permanently totally disabled as a result of both a work-related injury and a pre-existing condition. The Workers' Compensation Commission (the Commission) determined that appellant's disability status entitled her to a cost of living adjustment pursuant to Section 9–638. Appellees, the University of Maryland, College Park, *et al.* (the University), petitioned the Circuit Court of Prince George's County for review of that decision. The circuit court reversed the Commission, concluding that Section 9–638 does not allow cost of living adjustments to persons whose pre-existing impairment contributed to their permanent total disability.

---

1. In this context, we use the word "injury" to include accidental personal injury and occupational disease.

On August 28, 1996, the Commission determined that Linda K. Ball (Ball) was permanently totally disabled, 75% due to a compensable accidental injury to her back, and 25% due to a pre-existing condition. At a hearing held on May 24, 1999, Ball requested that the Commission award her a cost of living adjustment (COLA), in accordance with Section 9–638. The Commission granted Ball's request in a June 16, 1999 order. The University appealed the Commission's order to the Prince George's County Circuit Court. The University claimed that a COLA may only be awarded to a permanently totally disabled person when the permanent total disability is solely the result of an accidental injury. A COLA may not be awarded, the University argued, when the permanent total disability is the result of an accidental injury and a pre-existing condition. The circuit court agreed and reversed the Commission's decision.

The University's argument to the circuit court, and to this Court on appeal, is one of legislative interpretation. Our disagreement with the University's argument and the circuit court's judgment is based upon the application of the canons of statutory construction that instruct us, *inter alia*, to construe statutes and their respective sections relating to the same subject matter together.

Statutes which relate to the same thing or general subject matter, and which are not inconsistent with each other are *in pari materia*, and should be construed together so that they will harmonize with each other and be consistent with their general object and scope, even though they were passed at different times and contain no reference to each other. *Consistent with this established rule of statutory construction, we think all Sections of the Workmen's Compensation Law (Article 101) must be read and considered together in arriving at the true intent of the Legislature, as they form part of a general system.*

*Uninsured Employers' Fund v. Pennel,* 133 Md.App. 279, 293, 754 A.2d 1120 (2000) (quoting *Subsequent Injury Fund v. Chapman,* 11 Md.App. 369, 375, 274 A.2d 870, *aff'd,* 262 Md.

367, 277 A.2d 444 (1971)) (emphasis added). The statute in question, Title 9 of the Labor and Employment article of the Maryland Code, is divided into subtitles. There are twelve subtitles in Title 9, listed below:

*Subtitle 1. Definitions; General Provisions.*

*Subtitle 2. Covered Employees and Employers.*

*Subtitle 3. State Workers' Compensation Commission.*

*Subtitle 4. Insurance Coverage.*

*Subtitle 5. Entitlement to and Liability for Compensation.*

*Subtitle 6. Benefits.*

*Subtitle 6A. Rehabilitation Practitioners.*

*Subtitle 7. Claims Procedure, Hearings, and Appeals.*

*Subtitle 8. Subsequent Injuries.*

*Subtitle 9. Liability of Third Parties.*

*Subtitle 10. Uninsured Employers.*

*Subtitle 11. Prohibited Acts; Penalties.*

*Subtitle 12. Short Title.*

Md.Code (1999 Repl.Vol.) LAB. & EMPL., § 9–101, *et. seq.* Subtitle 6, or "Benefits," is further divided into parts. There are thirteen parts to Title 9, Subtitle 6, listed below:

Part I.   General Provisions.

Part II.   Temporary Partial Disability.

Part III.   Temporary Total Disability.

Part IV.   Permanent Partial Disability.

Part V.   Permanent Total Disability

Part VI.   Hernias.

Part VII.   Occupational Deafness.

Part VIII.   Permanent Disability Due in Part to Preexisting Disease or Infirmity.

Part IX.   Medical Benefits.

Part X.   Wage Reimbursement.

Part XI.   Vocational Rehabilitation Benefits.

Part XII.   Death Benefits.

Part XIII.   Funeral Benefits.

*Id.* Part V, or "Permanent Total Disability," is further subdivided into sections. There are currently six sections to Title 9, Subtitle 6, Part V, listed below:

§ 9–635. Scope of part.

§ 9–636. Determination of disability; presumption.

§ 9–637. Payment of compensation.

§ 9–638. Cost of living adjustment.

§ 9–639. Benefits additional.

§ 9–640. Survival of compensation.

*Id.* Subtitle 8, or "Subsequent Injuries," does not divide into parts, but instead, is directly subdivided into sections. There are currently eight sections to Title 9, Subtitle 8, listed below:

§ 9–801. Statement of intent.

§ 9–802. Compensation from Subsequent Injury Fund—Permanent disability.

§ 9–803. Same—Death.

§ 9–804. Awards.

§ 9–805. Waiver not a bar.

§ 9–806. Assessments.

§ 9–807. Impleader.

§ 9–808. Judicial Review.

*Id.* Subtitle 8 utilizes the Subsequent Injury Fund to protect employers and insurers by limiting an employer's liability, in specified cases of permanent disability caused by a combination of pre-existing permanent impairment and a subsequent injury, to only the costs of the subsequent injury. The Subsequent Injury Fund is responsible for payment of the remaining benefits. The policy underlying the adoption of Subsequent Injury Fund legislation was explained in *Subsequent Injury Fund v. Pack,* 250 Md. 306, 242 A.2d 506 (1968), where the Court of Appeals said, at page 308, 242 A.2d 506:

Its purpose was to persuade the employer to employ the handicapped individual by limiting the liability, which the employer may otherwise have incurred, in the event the previously disabled or injured individual sustained a subsequent occupational injury, although not of itself disabling,

but which, coupled with previous impairment, rendered the individual permanently disabled, thus exposing the employer to liability for the cumulative effect of the prior and subsequent injuries. By the terms of the statute, if the employee sustained a subsequent compensable disability but the cumulative effect of the disability and the prior disability resulted in a permanent total or permanent partial disability, the employer and his insurance carrier would only be liable for compensation payable by reason of the subsequent injury.

Ball claims that because she is permanently totally disabled, she is entitled to a COLA under Section 9–638(a), which provides:

[C]ompensation paid under this Part V of this subtitle is subject to an annual cost of living adjustment.

The University, on the other hand, contends that Subtitle 6 is inapplicable to Ball because her compensation is fixed by Subtitle 8. The University directs our attention to Section 9–635, which states as follows:

A covered employee who is permanently totally disabled due to an accidental personal injury or an occupational disease shall be paid compensation in accordance with this Part V of this subtitle.

The University argues that "Section 9–635 is unambiguous: only permanent total disability that results from an accidental injury *alone* is covered under this part." (Emphasis added.) It is exclusively Subtitle 8, the University maintains, that addresses permanent total disability that results from an accidental injury combined with a pre-existing condition, and nowhere in Subtitle 8 is there any provision for the payment of a COLA. The University argues that if "employers who have hired employees with pre-existing disabilities now have to pay a cost of living adjustment [then it] will have a chilling effect and will deter employers from hiring such individuals."

Ball replies that reading Title 9 "in total reveals that Subtitle 6 establishes and governs the benefits to which an injured worker is entitled. Subtitle 8 exists to guide the

Workers' Compensation Commission in determining what portions of the benefits awarded under Subtitle 6 are a liability of the employer/insurer and what portions are the liability of the Subsequent Injury Fund." We agree.

We do not interpret Subtitles 6 and 8 so as to exclude consideration of one other. Instead, they are to be read together as they are subdivisions of the same Title. Simply stated, we agree with Ball's position that Subtitle 6 explains the benefits to be awarded to permanently totally disabled persons. Subtitle 8 explains how the costs of *Subtitle 6 benefits* are to be allocated in those particular instances when the permanently totally disabled person's disability is the result of a combination of an injury and a pre-existing impairment.

We arrive at this interpretation by first examining the language of the statute. Contrary to the University's argument, Section 9–635 does not include the words *only* or *alone*. There is no indication in the language of the statute that these words are even implied. The University claims that further evidence that its interpretation is correct exists in Section 9–637. Just as in Section 9–635, however, Section 9–637 does not use the words *only* or *alone* to distinguish permanent total disabilities caused solely by a single injury from permanent total disabilities caused by a combination of a pre-existing impairment and a subsequent injury.

Our interpretation that the current Subtitle 6 explains entitled benefits, and the current Subtitle 8 allocates the costs of those benefits in particular circumstances is supported by previous opinions of the Court of Appeals and this Court, and by the history of Workers' Compensation legislation in this State. Prior to recodification in 1991, the statutory provisions governing the law of Workers' Compensations were found in Article 101 of the Maryland Code. *See* 1991 Md. Laws, ch. 8. The current Title 9, Subtitle 6, previously existed as Article 101, Section 36. The thirteen parts of Subtitle 6 existed within the body of Section 36, sometimes as specifically enumerated subsections and sometimes contained within the text

of other subsections. For example, former Section 36(1) corresponds to current Subtitle 6, Part V, and former Section 36(7) is now Subtitle 6, Part VIII. The current Title 9, Subtitle 8, previously existed as Article 101, Section 66.

In *Subsequent Injury Fund v. Kraus*, 301 Md. 111, 482 A.2d 468 (1984), a case decided prior to the recodification, the Court of Appeals stated that despite a combination of a pre-existing condition and an accidental injury the determination of the total compensation to be paid in a permanent total disability case should be made in accordance with the provisions of Section 36 of Article 101. The decision in *Kraus* centered around the determination of *how* the costs of benefits to Kraus, a Baltimore City firefighter permanently totally disabled—70% attributable to an occupational disease and 30% due to a pre-existing condition—were to be allocated between Baltimore City and the Subsequent Injury Fund. *Kraus*, 301 Md. at 112, 482 A.2d 468. The Court never questioned the appropriateness of relying on Section 36 to determine the benefits to which Kraus was entitled. *Id.* at 113, 482 A.2d 468.

Further evidence of this principle exists in *Anchor Motor Freight, Inc. v. Subsequent Injury Fund*, 278 Md. 320, 363 A.2d 505 (1976). The Court of Appeals in *Anchor Motor Freight* explained in consecutive footnotes that the statutory authority for the determination of compensation amounts is found in Section 36, and the authority for the apportionment of compensation is found in Section 66. The Court there dealt with the case of an employee of Anchor Motor Freight, who suffered an injury that left him permanently partially disabled—an 80% industrial loss of the use of his body, 52% due to an accident, and 28% due to a pre-existing condition. The award, made under the "Other Cases" provision of Maryland Code (1957, 1964 Repl.Vol.), Art. 101, § 36(4), was apportioned between the employer and insurer (the petitioners) and the Subsequent Injury Fund (the respondent). In footnote 1, at page 324, 363 A.2d 505, the Court said:

Section 36 of Article 101, Maryland Code (1957, 1964 Repl. Vol.), delineating benefits payable to claimants (amended as to amounts, *see* 1976 Cumulative Supplement), is divided

into several subsections which apply to various types of disabilities, the following of which are applicable to this appeal: § 36(1), pertaining to permanent total disabilities; § 36(3), applying to permanent partial disabilities (enumerated injuries); and § 36(4), pertaining to permanent partial disabilities (other, non-specific cases).

Footnote 2 of that opinion stated that the apportionment was made pursuant to Article 101, Section 66(1). *Id.*

Also relevant to the instant case is this Court's decision in *Reliance Insurance Co. v. Watts,* 16 Md.App. 71, 293 A.2d 836 (1972). *Watts* traditionally stands as "[a] graphic demonstration of [the] general principle as to how the [Subsequent Injury] Fund supplements an award otherwise totally borne by the employer." *Anchor Motor Freight,* 278 Md. at 325, 363 A.2d 505. Watts lost his left leg in an automobile accident that occurred prior to his employment, and then suffered injuries during the course of his employment resulting in the loss of his other leg, the combined effects of which left him permanently totally disabled—50% from the employment accident and 50% due to the pre-existing condition. *Watts,* 16 Md.App. at 72, 293 A.2d 836. We held:

> '[T]he compensation payable under this article for such injury,' referring to a subsequent injury which calls for the application of § 66(1), must be determined upon the assumption that the employee had no pre-existing 'permanent impairment due to a previous accident or disease or any congenital condition, which is or is likely to be a hindrance or obstacle to his employment.'
>
> The commission should have ordered the employer and insurer to make the payments called for by the schedule in § 36(3)(b) for the loss of a leg, plus the additional payments provided in § 36(3)(a) for serious disability, and should have ordered the Subsequent Injury Fund, after completion of those payments, *to pay additional compensation to make the total payments equal to the compensation for permanent total disability.*

*Watts,* at 75–76, 293 A.2d 836 (emphasis added). Lest there remain any doubts that the emphasized language above specifically referred to the immediate predecessor of Subtitle 6, Part V of Title 9, the Court of Appeals explained *Watts,* in *Anchor Motor Freight,* as follows:

> Under the statute the employer was required to pay only for the loss of one leg under the specific schedule of benefits in § 36(3), as if that were the full extent of the injury, *while the Fund was liable to for the remainder of benefits payable under § 36(1) to which the claimant was entitled as a totally disabled person.*

*Anchor Motor Freight,* 278 Md. at 325, 363 A.2d 505 (emphasis added). These cases make it abundantly clear that the benefits to which the claimant would be entitled were to be determined by reference to Section 36 of Article 101, and that Section 66 of that Article, relating to the Subsequent Injury Fund, would control the apportionment of those payments.

When the Legislature first provided for a cost of living adjustment in 1987, it did so by adding to the provisions of Section 36(1) of Article 101 the following language:

> Compensation under this subsection shall be subject to an annual cost of living adjustment.

1987 Md. Laws, ch. 591. This subsection of Section 36 dealt only with permanent total disability awards, and it seems clear that by employing the language "compensation under this subsection" the Legislature intended only to restrict the COLA to permanent total disability awards, and did not thereby intend to somehow limit the COLA to permanent total awards that might be subject to apportionment pursuant to Article 101, Section 66.

The University argues to the contrary, however, and further argues that language in the 1991 recodification of the Workers' Compensation Law "clarified" the legislative intent that the COLA was not to apply to permanent total disability awards apportioned as a result of a subsequent injury. The University contends:

[W]hen the statute was recodified as § 9–635, in 1991, the Legislature added the phrase "a covered employee who is permanently totally disabled due to an accidental personal injury or an occupational disease shall be paid compensation in accordance with this Part V of this subtitle." The predecessor to § 9–635, Article 101 § 36(1)(a), did not include that language. It must be assumed that the Legislature intended to differentiate between two classes of permanent total disability, for there is no other explanation for the additional language. In addition, the "Special Revisor's Note" to § 9–635 indicates that the language was added to state the "scope of application of this Part V of this subtitle." It stands to reason that the additional language was intended to clarify the existing law in its new, recodified format.

Section 9–635, to which the University refers, provides:

A covered employee who is permanently totally disabled due to an accidental personal injury or an occupational disease shall be paid compensation in accordance with this Part V of this subtitle.

The University quotes only part of the Revisor's Note following this section. The full note reads:

This section is new language *derived without substantive change* from the introductory phrase of former Art. 101, § 36(1)(a) and rephrased to state the scope of application of this Part V of this subtitle.

1991 Md. Laws, ch. 8. (Emphasis added.)

Moreover, the Revisor's Note to Section 9–638, which provides for the COLA, states:

This section is new language *derived without substantive change* from the second through eighth sentences of former Art. 101, § 36(1)(a).

*Id.* (Emphasis added.)

As the Court of Appeals said in *Giant Food, Inc. v. Department of Labor, Licensing and Regulation,* 356 Md. 180, 738 A.2d 856 (1999):

[T]his Court 'consistently has presumed that general recodifications of statutes, such as ... the Labor & Employment Article, are for the purpose of clarity only and not [for] substantive change, unless the language of the recodified statute unmistakably indicates the intention of the Legislature to modify the law.'

*Id.* at 191, 738 A.2d 856 (second alteration in the original) (citations omitted). We perceive no intent on the part of the Legislature to change this portion of the law in the process of recodification.

The University's final argument is that Ball's interpretation of the statute would do violence to the underlying policy of the Subsequent Injury Fund concept, in that it would increase the liability of the employer beyond that which it should bear from the subsequent injury alone. It argues that if it were required to pay only for the 75% permanent partial disability covered by the subsequent injury, it would not be required to pay a COLA, and thus it is being penalized for a pre-existing impairment contrary to the policy of the Act. What the University overlooked in making this argument is that the Commission's award shifts the ultimate financial impact of the COLA to the Subsequent Injury Fund: a result that is entirely consistent with the underlying policy of the Workers' Compensation Law. We explain.

The University's obligations for a 75% permanent partial disability of the body as a whole would be computed as follows: 75% of 500 weeks = 375 weeks (Section 9–627(k)(3)); award increased by one-third because award is for a serious disability—375 plus 125 weeks = 500 weeks (Section 9–630(a)(i)). This award would be payable at the rate of $305 per week, but in the present case the University would be entitled to a credit for 175 weeks of permanent disability previously paid. Accordingly, the University's liability without a COLA would be: 500 weeks less credit for 175 weeks = 325 weeks @ $305 = $99,125. The Commission's award provided:

It is, therefore, this 16th day of June, 1999 by the Workers' Compensation Commission ORDERED that for benefits paid in 1997, 1998 and 1999, the above named Employer/insurer are to adjust the claimant's weekly rate of compensation to reflect COLA increases for each year; however, the total amount of compensation paid by the Employer/Insurer shall not exceed the sum of $99,125 allowable under the "Other Cases" provision of the Statute; and beginning at the end of compensation to be paid by Employer/Insurer, the Subsequent Injury Fund shall continue compensation as awarded under Order dated August 28, 1996.

Thus, it is clear that the Commission limited the exposure of the University to the maximum it would have been required to pay for a 75% permanent partial disability *without* a COLA. Arguably, there is a minor fiscal impact to the University by the imposition of a COLA in that it will be required to pay its total obligation at a somewhat earlier date, but we do not consider this to be a significant difference that would be at odds with the underlying policy of the Workers' Compensation Law.

We conclude that it was the original intent of the Legislature to provide for an annual COLA in permanent total disability awards without regard to whether they involved apportionment due to a subsequent injury, and the Legislature did not intend to change that benefit when the statute was recodified.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE WORKERS' COMPENSATION COMMISSION.**

**COSTS TO BE PAID BY APPELLEES.**