*Carville A. Hollingsworth, et al. v. Severstal Sparrows Point, LLC, et al.*, No. 95, September Term, 2015, Opinion by Adkins, J.


**WORKERS' COMPENSATION ACT — PERMANENT TOTAL DISABILITY — SURVIVAL OF BENEFITS — MD. CODE (1991, 2008 REPL. VOL.), § 9-640 OF THE LABOR & EMPLOYMENT ARTICLE:** When the Workers' Compensation Commission finds a claimant permanently totally disabled, § 9-640 of the Workers' Compensation Act governs survival of benefits regardless of whether the claimant's permanent total disability is due solely to accidental injury or a combination of accidental injury and preexisting conditions.

Circuit Court for Baltimore County
Case No.: 03-C-14-012368
Argued: June 2, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 95

September Term, 2015

CARVILLE A. HOLLINGSWORTH, et al.

v.

SEVERSTAL SPARROWS POINT, LLC, et al.

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Battaglia, Lynne A. (Retired,
        Specially Assigned),

JJ.

Opinion by Adkins, J.

Filed:  July 11, 2016

This workers' compensation case between an injured worker's daughter, Heather Hollingsworth ("Appellant"), and the worker's former employer, Severstal Sparrows Point, LLC, and employer's insurer, Insurance Company of the State of Pennsylvania ("Appellees"), involves a dispute over survival of benefits in which we must decide which of two provisions—§ 9-632 or § 9-640—in the Labor and Employment Article applies. The Appellant seeks to collect benefits under the Maryland Workers' Compensation Act, Md. Code (1991, 2008 Repl. Vol.), §§ 9-101–9-1201 of the Labor and Employment Article ("LE") that would have been due to her father, Carville Hollingsworth ("Hollingsworth"), had he not died of causes unrelated to the accidental injury he sustained in the course of his employment. Under LE § 9-632, an award of benefits by the Workers' Compensation Commission survives upon the death of an injured employee. On the other hand, under LE § 9-640, an award of benefits survives upon the death of an injured employee only up to $45,000.00. Appellant argues that LE § 9-632 applies and Appellees contend that LE § 9-640 governs. For the reasons set forth below, we agree with Appellees that LE § 9-640 controls.

## FACTS AND LEGAL PROCEEDINGS

The facts of this case are undisputed. In 2010, Hollingsworth sustained an accidental injury in the course of his employment with Appellee. The body parts involved in the 2010 injury included Hollingsworth's neck, right shoulder, back, and right hand. In November 2013, the Commission issued an award of compensation after determining that, as the result of the combined effects of the accidental injury and his preexisting conditions, Hollingsworth was permanently totally disabled. The Commission found that

Hollingsworth had a 65% permanent disability due to the 2010 accidental injury. The Commission then found that the balance of his permanent disability, 35%, was due to his preexisting conditions, for which the Subsequent Injury Fund was responsible for paying compensation.

In accordance with these findings, the Commission directed the Appellees to pay Hollingsworth compensation at the rate of $798.00 weekly beginning February 7, 2013, not to exceed the sum of $345,534.00 allowable under the "Other cases" provision of the Maryland Workers' Compensation Act, LE § 9-627(k). The Commission also ordered the Subsequent Injury Fund to begin making payments to Hollingsworth at the end of the compensation to be paid by Appellees. The Commission ruled that these payments by the Fund would be made for as long as Hollingsworth continued to be permanently totally disabled.

Hollingsworth died in July 2014 from causes unrelated to the accidental injury. Up to the time of his death, Appellees made compensation payments pursuant to the Commission's award amounting to $52,166.54. Subsequently, the Appellant filed issues with the Commission seeking continued payment of the benefits provided in the November 2013 award.

Following an October 2014 hearing, the Commission issued an order in which it determined that Appellees were not obligated to make further payments under the award of compensation to Appellant because LE § 9-640 caps the survival of benefits at $45,000.00 and Appellees had already paid more than this amount to Hollingsworth at the time of his death.

Appellant petitioned for judicial review of the Commission's order to the Circuit Court for Baltimore County and both parties filed motions for summary judgment. The Circuit Court denied Appellant's motion and granted Appellees' motion, thereby affirming the Commission's ruling. Appellant then appealed the Circuit Court's decision to the Court of Special Appeals and filed a petition for writ of certiorari with this Court. Before the intermediate appellate court's consideration of this case, we exercised our bypass jurisdiction and granted *certiorari* under Maryland Code (1973, 2013 Repl. Vol.), § 12-203 of the Courts and Judicial Proceedings Article to consider the following question:

> Does a workers' compensation award payable by an employer and insurer for the degree of permanent disability which resulted from an accidental injury survive the death of the injured worker under § 9-632 of the Labor and Employment Article, so that it is payable to his dependents, in a case where he was found to have additional disability due to preexisting conditions which caused him to be permanently totally disabled?

We hold that LE § 9-640 governs survival of benefits where a claimant is found to be permanently totally disabled irrespective of whether the claimant's permanent total disability is due solely to accidental injury or a combination of accidental injury and preexisting conditions. Because LE § 9-632 does not apply, we answer no to the question presented and affirm the judgment of the Circuit Court.

**STANDARD OF REVIEW**

In an appeal from judicial review of an agency action, we review the agency's decision directly, not the decision of the Circuit Court or the Court of Special Appeals. *Hranicka v. Chesapeake Surgical, Ltd.*, 443 Md. 289, 297 (2015). In reviewing a Workers'

Compensation Commission decision, we must respect the expertise of the agency and accord deference to the Commission's own interpretation of the statute it administers. *Id.* A court may reverse a Commission decision "only if the court finds that the Commission's action was based on an erroneous construction of the facts or law." *Baltimore Cnty. v. Thiergartner*, 442 Md. 518, 529 (2015) (citations omitted). Although "'the decision of the Commission is presumed to be prima facie correct,'" this presumption does not "'extend to questions of law, which we review independently.'" *Elms v. Renewal by Andersen*, 439 Md. 381, 391 (2014) (quoting LE § 9-745(b) and *Montgomery Cnty. v. Deibler*, 423 Md. 54, 60 (2011)). This appeal involves strictly a matter of law—interpretation of LE § 9-632 and § 9-640.

## DISCUSSION

In deciding which provision of the Workers' Compensation Act governs survival of benefits in this case, we encounter a classic question of statutory interpretation. The cardinal rule of statutory construction is to ascertain and effectuate the intent of the General Assembly. *McClanahan v. Washington Cnty. Dep't of Soc. Servs.*, 445 Md. 691, 701 (2015). "Under the plain meaning rule, we must give the 'ordinary and natural meaning' to statutory language because this language is 'the primary source of legislative intent.'" *Id.* (citation omitted). "If the intent of the legislature is clear from the words of the statute, our inquiry normally ends and we apply the plain meaning of the statute." *Id.* (citation and internal quotation marks omitted).

When interpreting the Workers' Compensation Act, "additional principles of interpretation enter the equation." *Deibler*, 423 Md. at 61. The purpose of the Act is "to

4

protect workers and their families from hardships inflicted by work-related injuries by providing workers with compensation for loss of earning capacity resulting from accidental injury arising out of and in the course of employment." *Elms*, 439 Md. at 399 (citation omitted). As a remedial statute, if the plain language of the Act is ambiguous or unclear, it must be "construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes." *Id.* (citation and internal quotation marks omitted). We may not, however, "stifle the plain meaning of the Act, or exceed its purposes, so that the injured worker may prevail." *Id.* (citation and internal quotation marks omitted). In other words, when the language is plain, we may not create an ambiguity that does not exist in order to interpret the Act more favorably to the claimant. *Breitenbach v. N.B. Handy Co.*, 366 Md. 467, 473 (2001).

## The Statutory Language Is Unambiguous

Subtitle 6 of the Workers' Compensation Act addresses benefits payable under the Act. *See* LE §§ 9-601–9-689. Part IV of subtitle 6 encompasses § 9-625 through § 9-634. Section 9-625 establishes the scope of Part IV and provides that "[a] covered employee who is **permanently partially disabled** due to an accidental personal injury or an occupational disease shall be paid compensation in accordance with this Part IV of this subtitle." LE § 9-625 (emphasis added). Accordingly, under the plain language of LE § 9-625, when an employee is determined to be permanently partially disabled, Part IV governs the payment of workers' compensation benefits. The provision governing survival benefits within Part IV—and the provision Appellant argues applies to this case—is § 9-632. Under this section, "[i]f a covered employee dies from a cause that is not compensable under this

5

title, the right to compensation that is payable under this Part IV of this subtitle and unpaid on the date of death survives in accordance with this section." LE § 9-632(b).

In contrast, Part V of subtitle 6 encompasses § 9-635 through § 9-642. Section 9-635 delineates the scope of Part V stating, "[a] covered employee who is **permanently totally disabled** due to an accidental personal injury or an occupational disease shall be paid compensation in accordance with this Part V of this subtitle." LE § 9-635 (emphasis added). Thus, the plain language of LE § 9-635 dictates that when an employee is found to be permanently totally disabled, Part V governs the payment of benefits. The provision governing survival of benefits within Part V—and the provision Appellees contend applies to this case—is § 9-640. This provision states in pertinent part: "If a covered employee dies from a cause that is not compensable under this title, the right to compensation that is payable under this Part V of this subtitle and unpaid on the date of death survives in accordance with this section to the extent of $45,000 . . . ." LE § 9-640(b).

The Commission explicitly found that Hollingsworth was permanently totally disabled in its November 2013 award of compensation. In answering "[w]hat proportion of the employee's alleged disability is due to the alleged injury, and what proportion thereof, is due to the previous permanent impairment," the Commission stated: "Permanently totally disabled. 65% is due to the April 21, 2010 accidental injury (neck, right shoulder, back, and right hand), balance thereof is due to pre-existing conditions." As part of this finding, it ordered Appellees to "pay unto the above-named claimant [Hollingsworth], compensation for permanent total disability." Because Part V governs

6

the payment of benefits when an employee is found to be permanently totally disabled, § 9-640—the provision governing survival of benefits in Part V—applies.

Appellant endeavors to avoid the clear language of the statute by claiming that the Commission's determination that Hollingsworth had a 65% permanent disability due to the accidental injury is a finding of permanent partial disability. Appellant maintains that the Commission's permanent total disability finding is the result of adding Hollingsworth's 65% disability due to accidental injury to the proportion of disability attributable to Hollingsworth's preexisting conditions. In essence, Appellant considers a permanent total disability to be a disability that is attributable solely to an accidental injury. By characterizing the Commission's finding as a permanent partial disability determination, Appellant seeks to shift Hollingsworth from Part V of Subtitle 6 of the Worker's Compensation Act (permanent total disability) to Part IV (permanent partial disability).

Appellant's argument fails, though, because permanent total disability is a separate and unique determination, not dependent upon the numerical percentage of a claimant's partial impairment. That the Commission apportioned Hollingsworth's permanent total disability between the accidental injury and his preexisting condition does not convert the Commission's permanent total disability finding into a permanent partial disability determination. A finding of permanent total disability is distinct from a finding of permanent partial disability because permanent total disability means the claimant is incapable of working. *See Mureddu v. Gentile*, 233 Md. 216, 220 (1964) ("This Court has held that under our [Workers' Compensation] Act, total permanent disability means

7

incapacity to do work of any kind.") (citing *Jewel Tea Co. v. Blamble*, 227 Md. 1 (1961) and *Congoleum Nairn, Inc. v. Brown*, 158 Md. 285 (1930)).

The intermediate appellate court's decision in *Ball v. University of Maryland*, 137 Md. App. 229 (2000), supports the principle that permanent total disability is a distinct determination that does not hinge on the apportionment of a claimant's impairment. In *Ball*, the Court of Special Appeals considered whether a claimant was entitled to a cost of living adjustment under LE § 9-638 when a permanent total disability award was apportioned between the employer and insurer, and the Subsequent Injury Fund. 137 Md. App. at 231. As in this case, the employee in *Ball* was found to be permanently totally disabled as a result of both a work-related injury and a preexisting condition. *Id.* Writing on behalf of the court, Judge McAuliffe, sitting by special assignment, soundly rejected the employer and insurer's argument that there is a difference between permanent total disability from a single accidental injury and permanent total disability from an accidental injury combined with preexisting conditions. *See id.* at 235–36, 242 ("We conclude that it was the original intent of the Legislature [in § 9-638 of Part V of Subtitle 6 of the Workers' Compensation Act] to provide for an annual COLA [cost of living adjustment] in permanent total disability awards without regard to whether they involved apportionment due to a subsequent injury . . . ."). The intermediate appellate court's holding in *Ball* supports Appellees' argument that Part V governs all permanent total disability claims, including those where a permanent total disability exists due to the combined effect of an accidental injury and an employee's preexisting conditions.

8

Moreover, the statutory language of LE § 9-640 reflects that the General Assembly did not consider there to be a distinction between permanent total disability from a single accidental injury and permanent total disability from an accidental injury combined with preexisting conditions. Subsection (a) of LE § 9-640 provides that benefits owed by the Subsequent Injury Fund do not survive the death of a claimant. LE § 9-640(a) ("This section does not apply to compensation paid under Title 10, Subtitle 2 [Subsequent Injury Fund] of this [Labor & Employment] article."). The Subsequent Injury Fund is only liable for payment of benefits under a permanent total disability finding if the permanent total disability is apportioned between an employer and the Fund. *See* LE § 9-802(b) (detailing when covered employee is entitled compensation from the Subsequent Injury Fund); *see also* Code of Md. Regs. 14.09.01.01B(18) ("'Subsequent Injury Fund' or 'SIF' means the statutorily created entity . . . that may be a party to a claim and which pays benefits attributable to a compensable injury to previously injured body parts."). If we were to accept Appellant's argument that § 9-632 applies when a claimant's permanent total disability is from an accidental injury combined with preexisting conditions, subsection (a) of § 9-640 would be rendered nugatory. Appellant's theory thus conflicts with the well-established principle of statutory construction that "a statute should be read so that no word, clause, sentence or phrase is rendered . . . nugatory." *Motor Vehicle Admin. v. Gonce*, 446 Md. 100, 125 (2016) (citation and internal quotation marks omitted); *see Oglesby v. State*, 441 Md. 673, 687 (2015) ("Our canons of statutory interpretation, however, forbid us to 'construe a statute . . . so that [a] word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory.'") (citations omitted).

In arguing that a determination of permanent total disability is equivalent to a permanent partial disability equal to 100%, Appellant blurs the difference between a finding of permanent partial disability and a determination of permanent total disability. Yet the Workers' Compensation Commission has long recognized that the General Assembly designed a separate statutory scheme for permanent total disability claims. Pursuant to the hearing procedures that the Workers' Compensation Commission has adopted in the Code of Maryland Regulations ("COMAR"), a claimant must "[s]pecifically plead permanent total disability." COMAR § 14.09.03.02D(3). The regulations further stipulate that "[a] claimant alleging permanent disability shall file with the Commission an Issues Form that: (1) [e]xplicitly claims permanent partial **or** permanent total disability." *Id.* § 14.09.09.02A (emphasis added).

**Appellant's Other Arguments**

Appellant asserts that the November 2013 award of compensation ordered Appellees to pay benefits pursuant to the "Other Cases" provision in LE § 9-627 and that because this provision is part of the permanent partial disability provisions in Part IV, LE § 9-632 applies. This argument mischaracterizes the Workers' Compensation Commission's award—the award states that benefits shall not "exceed the sum of $345,534.00 allowable under 'Other Cases.'" Our opinion in *Subsequent Injury Fund v. Kraus* makes clear that the method of calculating an employer's liability when there is a permanent total disability finding apportioning liability between the employer and the Subsequent Injury Fund is simply "by reference" to the "Other Cases" provision in the permanent partial disability section of the statute. *See* 301 Md. 111, 122 (1984) ("The

10

assumption does not lead to the conclusion that the employer's contribution cannot be calculated **by reference** to the permanent partial disability sections or that employer and Fund payments must be concurrent.") (emphasis added). As Appellees correctly point out, the Commission's reference to the "Other Cases" provision in LE § 9-627 is not a directive that they pay permanent partial disability benefits. Rather, the Commission's longstanding "practice" of "refer[ring] to the statutory provisions governing the amount of award in permanent partial disability cases" is merely a means by which the Commission calculates benefits owed by an employer when there is a finding of permanent total disability where the Subsequent Injury Fund is also liable. *See id.* at 119.

In *Kraus*, the Court considered a dispute between an employer and the Subsequent Injury Fund regarding the allocation of payments under a permanent total disability award. *Id.* at 112. The Commission in that case found that a Baltimore City firefighter was permanently totally disabled and that 70% of the firefighter's disability was attributable to occupational disease and 30% to a preexisting condition. *Id.* We concluded that the Commission was correct in referring to the permanent partial disability provisions of the Workers' Compensation Act to calculate the City's liability even though the firefighter was permanently totally disabled because "the percentage of disability must be converted into a dollar amount in order to determine how much of the total award is payable by the employer." *Id.* at 120. Accordingly, *Kraus* does not stand for the notion, as Appellant suggests, that an employer's liability in cases where the Subsequent Injury Fund is also liable is to be governed by the permanent partial disability provisions of the Workers' Compensation Act. Instead, a fair reading of *Kraus* indicates that the opinion stands for

11

the limited principle that an employer's liability in such a case is to be calculated by referring to the applicable permanent partial disability provision to determine how much of the total award is payable by an employer.

Appellant also relies on the following language from *Anchor Motor Freight v. Subsequent Injury Fund* to support her claim that § 9-632 applies:

> [I]t is reasonable for the statute to hold the employer liable for the full effects of the compensable injury notwithstanding the fact that a previous impairment existed at the time of the subsequent accident.

278 Md. 320, 328 (1976). Appellant asserts that if § 9-640 applies, the employer and insurer would be relieved of their responsibility to pay for the full effects of the compensable injury. Appellant, however, takes this language from *Anchor Motor Freight* out of context without analyzing the circumstances under which the award in that case was made. In that case, the employer proffered that a claimant who was previously found to be permanently partially disabled as a result of the combination of an accidental injury and a preexisting condition could not later be found permanently totally disabled as a result of the worsening of the condition from the accidental injury alone. *Id.* at 327. We rejected this argument and held that an employer is liable for permanent total payments, even if the employee had a preexisting impairment, if the compensable injury is sufficient to cause the employee to be permanently totally disabled initially, or as a result of a subsequent worsening. *Id.* at 328–29. Unlike this case, which concerns an employee who was permanently totally disabled due to accidental injury and preexisting conditions, *Anchor Motor Freight* addressed an employer's liability when the claimant was permanently totally

disabled as a result of the accidental injury alone. Appellant's reliance on *Anchor Motor Freight* is therefore misplaced because she attempts to divorce the opinion's language from the context in which that language was used.

Finally, Appellant points to *McKenzie v. C.C. Kottcamp & Sons, Inc.*, 311 Md. 54 (1987), to support her claim that the Commission's finding Hollingsworth 65% disabled due to accidental injury was a permanent partial disability determination. In *McKenzie*, a claimant was permanently totally disabled with 65% of the employee's disability attributable to accidental injury and 35% due to preexisting conditions—the exact apportionment in this case. *See id.* at 56. The Commission ordered the employer and insurer in *McKenzie* to pay benefits at the permanent partial disability rate, but ordered the Subsequent Injury Fund to pay compensation at the permanent total disability rate. *Id.* We rejected that disparity because "[t]he instant case is one of compensation for permanent total disability and logically the rate of payment should be that applicable to permanent total disability." *Id.* at 61. In conclusively stating that the award was one for permanent total disability, we opined:

> The issue in this permanent, total disability, subsequent injury, workers' compensation case is the rate at which the compensation apportioned to the employer is paid. **Although the total amount of compensation payable by the employer is apportioned as if the injury were a permanent partial one, we shall hold . . . that periodic payments of the amount so apportioned are to be paid at the rate at which permanent total disability compensation is paid.**

*Id.* at 55–56 (emphasis added). We thus agree with Appellees' contention that, "[f]or the Appellants to suggest that the *McKenzie* case somehow supports their position turns the holding in *McKenzie* on its head."

## CONCLUSION

Our reasoning in this case can be aptly summarized by the Workers' Compensation Commissioner's statement at the October 2014 hearing:

> [T]here is absolutely no support in the law, in the case law or in the statute, that says when there is a death of the claimant before the [Subsequent Injury Fund] starts paying that the permanent total [disability] finding simply evaporates . . . . To magically move from Part V to Part IV upon the death of the claimant is inconsistent with the legislative intent and is inconsistent with the statutory scheme.

For these reasons, we affirm the judgment of the Circuit Court.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**